UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Washington Avenue Lofts Limited Partnership, | Civil No. 09-2872 (DWF/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Anthony Beasley and Timothy J. Oliver, | |
| Defendants, | |
| and | |
| Timothy J. Oliver, | |
| Cross-Claimant, | |
| v. | |
| Anthony Beasley, | |
| Cross-Defendant. | |

_____

Archana Nath, Esq., and Edward M. Laine, Esq., Oppenheimer, Wolff, & Donnelly, LLP, counsel for Plaintiff.

Anthony Beasley, *Pro Se*, Defendant and Cross-Defendant.[1]

Todd H. Johnson, Esq., Oliver & Johnson, PA, counsel for Defendant and Cross-Claimant Timothy J. Oliver

_____

---

[1] Defendant and Cross-Defendant Anthony Beasley submitted no opposition to the summary judgment motion and did not appear at the motion hearing.

**INTRODUCTION**

This case involves a dispute over a settlement agreement. The matter is before the Court on a Motion for Summary Judgment brought by Plaintiff The Washington Avenue Lofts Limited Partnership ("Lofts"). For the reasons set forth below, the Court denies Lofts' motion.

**BACKGROUND**

Lofts, a mortgage lender, gave a mortgage to Anton Building Systems ("ABS") for a condominium project. ABS subsequently defaulted on the mortgage. As a result, Lofts commenced an action in 2005 in this Court against ABS and others, including ABS's principal, Anthony Beasley, and Timothy Oliver, who had provided a guarantee so that ABS could obtain the original loan. *See* Civ. No. 05-2367 (ADM/JSM). The parties resolved that case by way of a settlement agreement dated September 11, 2006.

Under the settlement agreement, Beasley's and Oliver's individual liabilities to Lofts were tied to two things: (1) a negotiated figure that reflected a portion of the unpaid principal and interest of the original mortgage loan—$1,948,000; and (2) the sale of the "Remaining Units" —two condominium units that had not been sold at the time of the settlement agreement.[2] In addition, Oliver's liability was also tied to the terms of a $350,000 promissory note that Oliver had executed together with the settlement agreement, which is referred to as the "O-Note." The settlement agreement also refers to

---

[2] Later, one of the units was split into two units so the Remaining Units became three, instead of two, units.

a "LOC," which was a line-of-credit that another party to the original litigation, William Knutson, agreed to provide to Lofts as part of the settlement agreement.

The provisions of the settlement agreement relevant to the current dispute are as follows:

> 7. Upon closing of each sale of a Remaining Unit, [ABS] shall cause the title company which handles the closing of such sale to pay directly to [Lofts] the net proceeds of the sale . . . . *If, and only if, the amount received by [Lofts] from the sale of the Remaining Units equals or exceeds $1,948,000 on or before the date which is one year from the date hereof*, then (i) [ABS], Knutson and Oliver shall have no further obligation to pay the respective amounts set forth in Paragraph 8 below and (ii) [Lofts] shall return the LOC to Knutson and the O-Note to Oliver.
>
> 8. If [Lofts] has not received the amount of $1,948,000 from the sale of the Remaining Units on or before the first anniversary of this Agreement then (i) [Lofts] first shall be entitled to draw on the LOC for the "Shortfall", not to exceed $150,000 and (ii) [ABS] and Oliver jointly and severally shall pay to [Lofts] the remainder of the Shortfall; provided, however, that Oliver's liability shall not exceed the face amount of the O Note. *The Shortfall is the remainder obtained by subtracting the amount received by [Lofts] from the sale(s) of the Remaining Units on or before the first anniversary of the Agreement from $1,948,000.*

(Doc. No. 17, Ex. 1 (emphasis added).)

The Remaining Units were not sold on or before September 11, 2007, the first anniversary of the settlement agreement. Instead, the Remaining Units were sold in 2008 and 2009 for a total of $852,464.91, which is $1,095,545.09 less than the $1,948,000 amount stated in the settlement agreement.

A dispute has now arisen because the Remaining Units were not sold on or before the first anniversary of the settlement agreement. As a result, Lofts commenced an action in this Court against Beasley and Oliver. In his answer, Oliver asserts a cross-claim

3

against Beasley. Lofts now moves for summary judgment, asserting that it is entitled to summary judgment against Beasley for the amount of the Shortfall and against Oliver for principal and interest due under the terms of the O-Note.

**DISCUSSION**

**I.      Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Effect of Remaining Units Not Selling Within One Year

Under Minnesota law,[3] it is well established that settlement agreements are governed by principles of contract law. *See Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971). This case turns upon the effect of the Remaining Units not selling on or before the first anniversary date of the settlement agreement.

The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979). Contract language "must be given its plain and ordinary meaning and will be enforced by the courts even if the results are harsh." *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004) (quotation and citations omitted). A court is required to harmonize all provisions if possible and interpret a contract in a way that gives all of its provisions meaning. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995).

The construction and effect of a contract presents a question of law, unless an ambiguity exists. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Id.* In this way, a determination of whether a contract is ambiguous is a question of law for the Court, but then resolution of the ambiguity is a question of fact to be determined by a jury. *John Morrell and Company v. Local Union*

---

[3] The settlement agreement does not contain a choice of law provision, but the parties agree in their briefing that Minnesota law applies.

*304A of the United Food and Comm. Workers, AFL-CIO*, 913 F.2d 544, 550-51 (8th Cir. 1990). A jury may properly consider extrinsic evidence in resolving the ambiguity. *Id*.

Lofts asserts that its summary judgment motion involves the application of unambiguous terms of the settlement agreement. Lofts asserts that it has fulfilled its obligations under the settlement agreement. Specifically, it asserts that it properly handled the foreclosure proceedings and that it did not increase the Shortfall by turning down offers on the Remaining Units. Lofts explains that there is no dispute that the sales of the Remaining Units did not exceed $1,948,000. Thus, Lofts contends that Oliver and Beasley are responsible for the Shortfall.

Relying on paragraph 8 of the settlement agreement, Lofts contends that Beasley owes it $945,545.09 and that Oliver owes $350,000 in principal, plus interest at 25% per annum. Specifically, with respect to Oliver, Lofts argues:

> Pursuant to Paragraph 8 of the Settlement Agreement, Lofts was entitled to calculate the Shortfall as of the "first anniversary date of this [Settlement] Agreement," September 11, 2006. At that time, no revenues had been realized from the sale of the Remaining Units. Although Lofts has, in this motion, accorded Beasley and Oliver the benefit of the later sales of the Remaining Units in calculating the Shortfall, Oliver's contractual obligation to pay interest began to run on September 11, 2007.

(Doc. No. 13 at 24.)

Oliver responds that he owes Lofts nothing because the Shortfall is zero under the terms of the settlement agreement. Oliver explains that Lofts' argument for calculating the Shortfall at the time when the Remaining Units sold regardless of when the sales took place is inconsistent with the intent of the parties and the language of the settlement agreement. He contends that Lofts' interpretation of the settlement agreement would

render the phrase "on or before the first anniversary date" meaningless.  Oliver explains that he agreed to the terms of the settlement agreement because he received a reduction of his guaranty and a limited time of one year that he would be at risk on his guarantee in exchange for giving up his counterclaims in the original litigation and his rights to receive sale proceeds from the Remaining Units.  Oliver also points out that Lofts drafted the settlement agreement and that any ambiguities should be construed against the drafter.  Finally, Oliver takes issue with how Lofts calculates the interest it asserts Oliver owes under the O-Note.

Viewing the evidence in the light most favorable to Beasley and Oliver, the Court finds that the settlement agreement can be read to be reasonably susceptible to more than one interpretation.  Lofts' attempt to have the Court ignore the references to "on or before the first anniversary of the Agreement" would render half of the definition of "Shortfall" meaningless.  Also, the Court is unable to harmonize the parts of the settlement agreement that do not contain the one-year temporal restriction together with the parts that do contain the temporal restriction, especially considering the qualifier "if and only if."  Given this, the Court must deny Lofts' summary judgment motion because resolution of a contractual ambiguity is a question of fact that must be determined by a jury.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Lofts' Motion to Summary Judgment (Doc. No. [10]) is **DENIED**.


Dated: December 1, 2010            s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge