# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

The Washington Avenue Lofts
Limited Partnership,

              Plaintiff,

v.

Anthony Beasley and Timothy J. Oliver,

              Defendants,

and

Timothy J. Oliver,

              Cross-Claimant,

v.

Anthony Beasley,

              Cross-Defendant.

Civil No. 09-2872 (DWF/JJK)

**FINDINGS OF FACT,
CONCLUSIONS OF LAW,
ORDER AND MEMORANDUM**

---

Archana Nath, Esq., and Edward M. Laine, Esq., Oppenheimer Wolff & Donnelly LLP, counsel for Plaintiff.

Anthony Beasley, *Pro Se*, Defendant and Cross-Defendant.

Todd H. Johnson, Esq., Oliver & Johnson, PA, counsel for Defendant and Cross-Claimant Timothy J. Oliver.

---

The above-entitled matter came on before the Honorable Donovan W. Frank, United States District Judge, sitting without a jury.

Based upon the presentations of the parties, including the testimony and exhibits received, and the Court having heard the arguments of counsel and all submissions of counsel, and the Court being otherwise duly advised in the premises, hereby makes the following:

## FINDINGS OF FACT

1.      The dispute before the Court involves a Settlement Agreement dated September 11, 2006 ("Settlement Agreement") which was introduced as Plaintiff's Exhibit 1.  This Settlement Agreement was resolved prior to the litigation in the case before the Court.

2.      The prior litigation arose out of a loan secured by a mortgage in the amount of $1,700,000 made by Lofts to Anton Building Systems, LLC ("ABS") in connection with the development, construction and marketing of condominium units in real estate located at 607 Washington Avenue, Minneapolis, Minnesota.  Beasley and William Knutson ("Knutson") executed a Guaranty in connection with the loan.  (Plaintiff's Exhibit 3.)  Knutson was a defendant in the original litigation, but is not a defendant in the action before the Court.

Oliver executed a Partial Guaranty (Plaintiff's Exhibit 4) in connection with the mortgage loan.  Both the Guaranty and the Partial Guaranty were in favor of Lofts.  The prior litigation was commenced by Lofts against all three of the guarantors after the

2

Maturity Date of the mortgage loan passed with accrued interest and all other amounts

payable.  Beasley, Knutson and Oliver denied Lofts' allegations in the prior litigation and

asserted counterclaims.  As noted in paragraph 1, the Settlement Agreement resolved that

part of the litigation.

      3.     Paragraph 7 of the Settlement Agreement stated, in pertinent part, as

follows:

> 7.     Upon closing of each sale of a Remaining Unit, AB shall cause the title company which handles the closing of such sale to pay directly to the Plaintiff the net proceeds of the sale, as such term is defined in the Direct Pay Letter addressed to the title company, which is attached hereto as Exhibit 7 and made a part hereof.  If, and only if, the amount received by Plaintiff from the sale of the Remaining Units equals or exceeds $1,948,000 on or before the date which is one year from the date hereof, then (I) AB, Knutson and Oliver shall have no further obligation to pay the respective amounts set forth in Paragraph 8 below and (ii) Plaintiff shall return the LOC to Knutson and the O-Note to Oliver.

      4.     Paragraph 8 of the Settlement Agreement stated, in pertinent part, as

follows:

> 8.     If Plaintiff has not received the amount of $1,948,000 from the sale of the Remaining Units on or before the first anniversary of this Agreement then (I) Plaintiff first shall be entitled to draw on the LOC or the "Shortfall", not to exceed $150,000 and (ii) AB and Oliver jointly and severally shall pay to Plaintiff the remainder of the Shortfall; provided, however, that Oliver's liability shall not exceed the face amount of the O Note.  The Shortfall is the remainder obtained by subtracting the amount received by Plaintiff from the sale(s) of the Remaining Units on or before the first anniversary of the Agreement from $1,948,000.

      5.     The Remaining Units were not sold on or before September 11, 2007, the

first anniversary date of the Settlement Agreement.  Instead, the Remaining Units were

sold in 2008 and 2009.  Lofts received a total of $852,464.91 as net proceeds from the sales.

6.      Oliver has asserted during the entire course of the case before the Court that because the remaining units were not sold "on or before the first anniversary date" of the Settlement Agreement, that he has no liability.  Moreover, Oliver further asserts that he owes no interest pursuant to the O-Note for the additional alternative reason that his liability is limited to $350,000.

7.      The Court finds that, pursuant to the plain and ordinary meaning of the terms of the Settlement Agreement, if the Remaining Units were not sold on or before the first anniversary date of the Settlement Agreement, the "Shortfall" would be the entire amount of $1,948,000.

8.      The Court finds that, based upon the evidence before the Court, there is no evidence to establish that there was an unexpressed intent of the parties that contemplated that Beasley and Oliver would have their obligations to Lofts extinguished if the Remaining Units were not sold within one year of the Settlement Agreement.

9.      On May 23, 2006, Beasley forwarded a draft Settlement Agreement and Pierringer Release to Howard Edison ("Edison") of Lofts.  (Plaintiff's Exhibit 6.)  The terms proposed at that time included:  a refinancing of the Remaining Units and a payment to Lofts of the sum of $1,500,000 upon closing; the payment by Beasley to Lofts of the sum of $290,000 within one year; and that Oliver's obligation under his Partial Guaranty be reduced to $290,000.  Further, payment by Oliver would become due only if

4

Beasley failed to make his payment.  Edison forwarded the proposal to his attorney, Arthur E. Pape ("Pape").  The terms were rejected by Lofts.

10.     The attorneys who represented Oliver, Beasley, and ABS in the litigation, referenced above, were involved in the settlement negotiations.  Mark Gleeman ("Gleeman") represented Beasley and ABS and Brian McCool ("McCool") represented Oliver.  Consequently, following communications between and among counsel, Pape prepared and circulated on July 12, 2006, a Settlement Agreement that was a redline revision of a draft earlier prepared by Gleeman.  (Plaintiff's Exhibit 13.)  Lofts was willing to give Defendants up to a year to delay payment and to try to use the proceeds from potential sales of the Remaining Units to reduce the negotiated amount owed within that one year period.  However, Lofts was not willing to grant more than a year to Defendants to try to reduce the negotiated amount through sales of the Remaining Units, and it wanted security in exchange for the delay:  ownership of the Remaining Units; a letter of credit; and a promissory note.  As to ownership of the Remaining Units, Lofts would receive the benefit of ownership plus the negotiated amount if ABS and Beasley did not sell the Remaining Units within one year.

11.     The July 12, 2006 draft contained proposals for provisions that are issues in the case before the Court.  Those provisions stated, in pertinent part, as follows:

   a.     Paragraph 4 of the draft specified the obligations of ABS and Beasley to manage, market, maintain, and operate the Remaining Units;

b.      Paragraph 5 of the draft set forth the obligations of ABS and Beasley to reduce offers to purchase the Remaining Units to a writing executed by the prospective buyer and forward the same to Lofts so that such written and signed offers could be approved or disapproved by Lofts;

c.      Paragraph 6(a) of the draft set forth the amount–$150,000–of the Knutson Letter of Credit;

d.      Paragraph 6(b) of the draft provided for the execution and delivery to Lofts of a promissory note (the "O-Note").  Lofts wanted a note to facilitate the ability to obtain an immediate judgment in the event there was a default under the terms of the Settlement Agreement;

e.      Paragraph 7 of the draft set forth the following language that is present in the final version of the Settlement Agreement:

> If, and only if, the amount received by Plaintiff from the sale of the Remaining Units equals or exceeds $1,948,000 on or before the date which is one year from the date hereof, then (I) AB, Knutson and Oliver shall have no further obligation to pay the respective amounts set forth in Paragraph 8 below, and (ii) Plaintiff shall return the LOC to Knutson and the O-Note to Oliver.

f.      Paragraph 8 of the draft set forth the following introductory clause that also is contained in the final Settlement Agreement:

> If Plaintiff has not received the amount of $1,948,000 from the sale of the Remaining Units on or before the first anniversary date of this Agreement then . . . .

6

12.     The Court finds that Pape drafted the "[i]f, and only if" language set forth in subparagraph e. to make it clear that the only circumstance under which Defendants would have no further liability to Lofts would be if Lofts received $1,948,000 from the sale of the Remaining Units on or before the date which was one year from the date of the Agreement.

Significantly, Paragraph 8 of the draft concluded with the following sentence, which the Court finds defines the term "Shortfall" that is also contained in the finalized version of the Settlement Agreement:

> The Shortfall is the remainder obtained by subtracting the amount received . . . from the sale(s) of the Remaining Units on or before the first anniversary date of the Agreement from $1,948,000.

13.     Based upon the evidence before the Court, the Court finds that the Shortfall language was utilized with the intent to calculate the Shortfall on the first anniversary date.

14.     There is no evidence before the Court to suggest or otherwise establish that any party, including the Defendants, asserted or otherwise raised the issue that the provisions relating to the first anniversary date and Shortfall were unclear or ambiguous.

15.     On August 24, 2006, Pape circulated Plaintiff's Exhibit 14, which is a revised draft, with a cover note, stating, in part:  "I believe I have made the changes that we have agreed on."

The evidence establishes that a change was made with respect to Oliver's liability for the remainder of the so-called Shortfall, and a change was made to the O-Note.

Significantly, the earlier July 12, 2006 draft at Paragraph 8 provided, in pertinent part:

> (ii)  Oliver shall pay to Plaintiff 70% of the Shortfall, not to exceed $350,000.

However, in the August 21, 2006 draft, the language was changed to provide, in pertinent part, as follows:

> (ii)  AB and Oliver jointly and severally shall pay to Plaintiff the remainder of the Shortfall; provided, however, that Oliver's liability shall not exceed the applicable 70% of the Shortfall or the face amount of the O Note.

16.     Another draft was circulated (Plaintiff's Exhibit 15) on August 24, 2006, following additional discussions among counsel for the parties.  Paragraph 8 was again revised to delete the 30% percent and 70% provisions that existed in the prior drafts.

17.     On September 8, 2006, Pape circulated a revised draft (Plaintiff's Exhibit 17) with a new Paragraph 1, as requested by McCool.

18.     At all times the parties now before the Court proceeded with arms-length negotiations at a time when each had counsel.

19.     The Court finds that the plain and ordinary meaning of the second sentence of Paragraph 7 of the Settlement Agreement that begins with "[i]f, and only if" clearly conveys and was intended to convey that Beasley, Knutson, and Oliver would have no further obligations to Lofts only in the event the amount received by Lofts from the sale of the remaining units equaled or exceeded $1,948,000 on or before the date which was one year from the Settlement Agreement.

8

20.     The Court finds and concludes that the plain and ordinary meaning of Paragraph 8 of the Settlement Agreement is consistent with the second sentence of Paragraph 7 of the Settlement Agreement.  Specifically, the first clause of Paragraph 8 of the Settlement Agreement set forth the consequences that result if Lofts "has not received the amount of $1,948,000 from the sale of the Remaining Units on or before the first anniversary of this Agreement."

The last sentence of Paragraph 8 of the Settlement Agreement defines a "shortfall" in a manner that utilizes the first anniversary date as the relevant time period for the calculation.  Specifically, it states:  "The Shortfall is the remainder obtained by subtracting the amount received by Plaintiff from the sale(s) of the Remaining Units on or before the first anniversary date of the Agreement from $1,948,000."

21.     The Court finds and concludes that when Paragraphs 7 and 8 are read together in the context of the entire Settlement Agreement, it is clear that if Lofts did not receive $1,948,000 on or before the first anniversary date, payment obligations for the Shortfall would follow.

22.     Oliver has consistently asserted, as noted in Paragraph 6, that his liability is capped at $350,000.  As noted by both parties, the pertinent language in the Settlement Agreement provides, in relevant part, as follows:

> (ii)  AB and Oliver jointly and severally shall pay to Plaintiff the remainder of the Shortfall; provided however that Oliver's liability shall not exceed the face amount of the O-Note.

23.    The Court finds and concludes that the word "liability" in section ii of the Settlement Agreement limits Oliver's liability to the face amount of the O-Note as it relates to "for the remainder of the Shortfall."  It does not eliminate his obligation to pay interest under the O-Note.

24.    The first sentence of the paragraph of the O-Note sets forth a promise to pay by Oliver of "up to the principal sum of $350,000, in lawful money of the United States of America, without interest."  The final sentences of the first paragraph of the O-Note provide:

> The principal or such lesser amount as may be payable pursuant to the terms of the Settlement Agreement of even date in connection with File #05-2367 in the United States District Court for the District of Minnesota to which Borrower and Lender are Parties, shall be payable on or before the first anniversary of the date hereof.  Amounts not paid when due shall bear interest at the rate of 25% per annum.

The principal amount, therefore, is determined with reference to the Settlement Agreement, and it becomes due on or before the first anniversary date of the O-Note. Significantly, the O-Note is dated September 11, 2006 (Plaintiff's Exhibit 2), creating a first anniversary dated of September 11, 2007.  Consequently, if whatever principal amount that is owed is not paid on or before the anniversary date, the Court finds that interest begins to accrue.

It should be noted that Plaintiff's Exhibit 19 was introduced, which was a letter sent by Pape to McCool, dated November 6, 2007, following the anniversary date.  At that time, Pape advised that the Remaining Units had not been sold by the first

10

anniversary date and that, therefore, "the Shortfall, defined in the Settlement Agreement is $1,948,000." Pape went on to state that Oliver's liability was limited to "$350,000 plus interest at the rate of 25% per annum from the Maturity Date of the O-Note to the date of payment." An offer was made, at that time, that if Oliver paid the sum of $350,000 within five business days, Lofts would forego interest.

Interestingly, on behalf of Oliver, McCool responded in a letter dated November 28, 2007 (Plaintiff's Exhibit 20), stating that delays in the foreclosure process might have an affect on Oliver's liability. Moreover, McCool argued that Lofts should not be entitled to collect under the O-Note until after the Remaining Units were sold. However, McCool did not argue that under the terms of the Settlement Agreement his client's, Oliver, liability was extinguished simply because the Remaining Units were not sold within one year, nor did McCool argue that interest could not accrue if Oliver's liability for the remainder of the Shortfall was as much as $350,000.

25.     Based upon the evidence before the Court, the Court respectfully rejects the notion that Lofts breached the Settlement Agreement with respect to the manner in which it handled foreclosure proceedings.

26.     Based upon the evidence before the Court, the Court respectfully rejects the notion, as alleged by the Defendants, that Lofts breached its obligations under the Settlement Agreement by improperly, or otherwise in bad faith, turning down offers presented by Beasley. It should be noted, and the Court so finds, that Beasley did not submit any written offer signed by a prospective purchaser to Lofts for approval that

11

Lofts turned down.  The only allegation made by Beasley is that he sent e-mails that refer to a "scenario" that he was "peripherally" involved in and had discussions with an investor.  *See* Plaintiff's Exhibit 26.  There was never an investor identified, and there was no written offer signed by a prospective purchaser.

27.     The Court finds that the Remaining Units were not sold on or before the first anniversary date and, consequently, the Shortfall became, consistent with the Settlement Agreement, $1,948,000.

28.     The Court finds that the "remainder of the Shortfall" contemplated by Paragraph 8 of the Settlement Agreement is determined by deducting the $150,000 letter of credit from the Shortfall of $1,948,000, creating a remaining Shortfall of $1,798,000. The proceeds received by Lofts from the sale of the Remaining Units, as set forth in Plaintiff's Exhibits 28, 29, and 30, was $852,464.91.

29.     When the post-anniversary sale of the Remaining Units are deducted from $1,948,000, and $150,000 for the letter of credit noted in Paragraph 30 is deducted, the "remainder of the Shortfall" is $945,535.09.

30.     That any conclusion of law which may be deemed a finding of fact is incorporated herein as such.

Based upon the above findings of fact, the Court now makes its:

## CONCLUSIONS OF LAW

1.     That any finding of fact that is deemed a conclusion of law is incorporated herein as such.

2.      Based upon the findings of this Court, the Court concludes that Anthony Beasley owes Lofts $945,535.09 for the "remainder of the Shortfall."

3.      Based upon the findings of fact, and pursuant to the terms of the Settlement Agreement and the O-Note, the Court concludes that Oliver owes Lofts the principal amount of $350,000 plus interest.

4.      Based upon the findings of fact, and pursuant to the terms of the Settlement Agreement and the O-Note, the Court concludes that Oliver owes Lofts interest as of the date of this Order in the amount of $313,321.92.

## ORDER

1.      Plaintiff, The Washington Avenue Lofts Limited Partnership, is entitled to judgment against Defendant Anthony Beasley in the amount of $945,535.09.

2.      Plaintiff, The Washington Avenue Lofts Limited Partnership, is entitled to judgment against Defendant Timothy Oliver in the amount of $663,321.92, which represents principal and interest owing as of the date of this Order.

3.      Defendants Timothy Oliver and Anthony Beasley shall submit to the Court within thirty (30) days of this Order letter briefs of five (5) pages or less addressing the procedural status of Defendant Timothy Oliver's cross-claim against Defendant Anthony Beasley and the Defendants' positions with respect to the cross-claim.

4.     The Court shall issue a single, final judgment after determining what relief, if any, to award for Defendant Timothy Oliver's cross-claim against Defendant Anthony Beasley.

Dated:  April 11, 2011              s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge

### MEMORANDUM

Lofts, a mortgage lender, gave a mortgage to Anton Building Systems ("ABS") for a condominium project.  ABS subsequently defaulted on the mortgage.  As a result, Lofts commenced an action in 2005 in this Court against ABS and others, including ABS's principal, Anthony Beasley, and Timothy Oliver, who had provided a guarantee so that ABS could obtain the original loan.  *See* Civ. No. 05-2367 (ADM/JSM).  The parties resolved that case by way of a Settlement Agreement dated September 11, 2006.

Under the Settlement Agreement, Beasley's and Oliver's individual liabilities to Lofts were tied to two things:  (1) a negotiated figure that reflected a portion of the unpaid principal and interest of the original mortgage loan—$1,948,000; and (2) the sale of the "Remaining Units"—two condominium units that had not been sold at the time of the settlement agreement.  In addition, Oliver's liability was also tied to the terms of a $350,000 promissory note that Oliver had executed together with the settlement agreement, which is referred to as the "O-Note."  The Settlement Agreement also refers to

14

an "LOC," which was a line-of-credit that another party to the original litigation, William

Knutson, agreed to provide to Lofts as part of the settlement agreement.

The provisions of the Settlement Agreement relevant to the current dispute are as

follows:

> 7.     Upon closing of each sale of a Remaining Unit, [ABS] shall
> cause the title company which handles the closing of such sale to pay
> directly to [Lofts] the net proceeds of the sale . . . . *If, and only if, the*
> *amount received by [Lofts] from the sale of the Remaining Units equals or*
> *exceeds $1,948,000 on or before the date which is one year from the date*
> *hereof*, then (I) [ABS], Knutson and Oliver shall have no further obligation
> to pay the respective amounts set forth in Paragraph 8 below and (ii) [Lofts]
> shall return the LOC to Knutson and the O-Note to Oliver.

> 8.     If [Lofts] has not received the amount of $1,948,000 from the
> sale of the Remaining Units on or before the first anniversary of this
> Agreement then (I) [Lofts] first shall be entitled to draw on the LOC for the
> "Shortfall," not to exceed $150,000 and (ii) [ABS] and Oliver jointly and
> severally shall pay to [Lofts] the remainder of the Shortfall; provided,
> however, that Oliver's liability shall not exceed the face amount of the
> O Note. *The Shortfall is the remainder obtained by subtracting the amount*
> *received by [Lofts] from the sale(s) of the Remaining Units on or before the*
> *first anniversary of the Agreement from $1,948,000.*

(Doc. No. 17, Ex. 1 (emphasis added).)

The O-Note provides in relevant part:

[Oliver] promises to pay to the order of [Lofts] . . . up to the principal sum
of $350,000, in lawful money of the United States of America, without
interest.  The principal or such lesser amount as may be payable pursuant to
the terms of the Settlement Agreement . . . shall be payable on or before the
first anniversary of the date hereof.  Amounts not paid when due shall bear
interest at the rate of the 25% per annum.

(Doc. No. 17, Ex. 28.)

15

A dispute has now arisen because the Remaining Units were not sold on or before September 11, 2007, the first anniversary of the Settlement Agreement.  Instead, the Remaining Units were sold in 2008 and 2009 for a total of $852,464.91, which is $1,095,535.09 less than the $1,948,000 amount stated in the Settlement Agreement.  Lofts therefore commenced an action in this Court against Beasley and Oliver.  Lofts seeks judgment against Beasley for the difference between $1,948,000 and the amount it has collected to date on the LOC and from the sale of the Remaining Units, and judgment against Oliver for $350,000 plus 25% interest from the date of the first anniversary of the Settlement Agreement.  Oliver and Beasley contend that Lofts' failure to sell the Remaining Units on or before the first anniversary of the Settlement Agreement eliminated their liability under that agreement.  In the alternative, Oliver contends that he does not owe interest under the terms of the O-Note.  Oliver also asserts a cross-claim against Beasley.[1]

In denying Lofts' earlier motion for summary judgment, the Court found that the Settlement Agreement could be read to be reasonably susceptible to more than one interpretation.  The Court concluded that the contract was ambiguous as to the effect of the one-year temporal restriction in the event that the Remaining Units did not sell in that time.  Two issues were therefore left to be resolved at trial:  (1) whether or not the fact

---

[1]   Oliver's cross-claim against Beasley was not formally addressed at trial.  The Court therefore directs Oliver and Beasley to submit letter briefs, not to exceed five (5) pages in length, addressing the procedural status of Oliver's cross-claim against Beasley and the Defendants' positions with respect to the cross-claim.

that the Remaining Units were unsold on the first anniversary of the Settlement

Agreement eliminated Oliver and Beasley's liability under that Agreement; and

(2) Oliver's contention that he did not owe interest under the terms of the O-Note and the

Settlement Agreement.

Under Minnesota law, it is well established that settlement agreements are

governed by principles of contract law.  *See Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn.

1971).  The primary goal of contract interpretation is to determine and enforce the intent

of the parties.  *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979).

Contract language "must be given its plain and ordinary meaning and will be enforced by

the courts even if the results are harsh."  *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*,

674 N.W.2d 176, 179 (Minn. 2004) (quotation and citations omitted).  A court is required

to harmonize all provisions if possible and interpret a contract in a way that gives all of its

provisions meaning.  *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539,

543 (Minn. 1995).

The construction and effect of a contract presents a question of law, unless an

ambiguity exists.  *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394

(Minn. 1998).  A contract is ambiguous only if its language is reasonably susceptible to

more than one interpretation.  *Id*.  In this way, a determination of whether a contract is

ambiguous is a question of law for the Court, but then resolution of the ambiguity is a

question of fact.  *John Morrell and Company v. Local Union 304A of the United Food*

*and Comm. Workers, AFL-CIO*, 913 F.2d 544, 550-51 (8th Cir. 1990).  A fact-finder may

properly consider extrinsic evidence in resolving the ambiguity.  *Id*.

Lofts asserts that all of the relevant provisions of the contract can be harmonized.

Lofts contends that the plain and ordinary meaning of the relevant language is that the

only circumstance under which the payment obligations of Beasley and Oliver are

extinguished is if Lofts receives at least $1,948,000 from the sale of the Remaining Units

on or before the first anniversary date of the Settlement Agreement.  Lofts also asserts

that it has fulfilled its obligations under the Settlement Agreement.  Specifically, it asserts

that it did not increase the Shortfall by turning down offers on the Remaining Units.

It is undisputed that Lofts did not receive any funds from the sale of the Remaining

Units on or before the first anniversary date.  Thus, Lofts contends that the Shortfall is the

entire amount of $1,948,000.  Lofts asserts that, pursuant to Paragraph 8 of the Settlement

Agreement, Beasley and Oliver are liable to Lofts for the remainder of the Shortfall, an

amount equal to $1,798,000.  Lofts asserts that its decision to delay enforcement until

after the sale of the Remaining Units was a business decision that does not modify

Beasley's and Oliver's liability under the Agreement.  Having received $852,464.91 from

those sales, however, Lofts has deducted that amount from the damages it seeks here.

Lofts therefore asserts that it is entitled to judgment against Beasley for $945,535.09 and

judgment against Oliver for the principal amount of $350,000 and interest at the rate of

25% per annum from September 11, 2007.

Oliver responds that he owes Lofts nothing because the Shortfall is zero under the terms of the Settlement Agreement.  He asserts that Lofts had total control over the Remaining Units and that Lofts' failure to complete the foreclosure process within a time frame that permitted a sale before the anniversary date and Lofts' lack of cooperation on Beasley's efforts to sell the Remaining Units increased the Shortfall.  Oliver contends that Lofts' argument for calculating the Shortfall at the time when the Remaining Units sold regardless of when the sales took place is inconsistent with the intent of the parties and the language of the Settlement Agreement.  Oliver explains that he agreed to the terms of the Settlement Agreement because he received a reduction of his guarantee and a limited time of one year that he would be at risk on his guarantee in exchange for giving up his counterclaims in the original litigation and his rights to receive sale proceeds from the Remaining Units.  Oliver also contends that Lofts drafted the Settlement Agreement and argues that any ambiguities should be construed against the drafter.

Finally, Oliver takes issue with how Lofts calculates the interest it asserts Oliver owes under the O-Note.  Oliver contends that the language in the O-Note that provides for a 25% interest rate 25% applies only when the Shortfall under the Settlement Agreement is less than $350,000 and that even in that circumstance the sum total of principal and interest for which Oliver is liable cannot exceed $350,000.

Having heard the evidence and reexamined the Settlement Agreement, the Court concludes that the fact that the Remaining Units were not sold before the first anniversary date of the Settlement Agreement did not eliminate Oliver and Beasley's liability under

19

that Agreement.  The Court finds that the effect of the one-year temporal restriction was not to limit the length of time for which Oliver and Beasley remained liable to Lofts but rather to set a date on which the amount of Oliver and Beasley's personal liability would be determined.  The first sentence of Paragraph 7 of the Settlement Agreement provides that Lofts will receive the net proceeds of the sale of the Remaining Units.  No limitation as to the time in which those sales must take place appears in that sentence.  The second sentence of Paragraph 7 then provides that if, and only if, Lofts receives $1,948,000 from the sale of the Remaining Units on or before the first anniversary date of the Settlement Agreement, Oliver and Beasley will have no further obligation under the Agreement.

Paragraph 8 then follows and sets forth the method of calculating Oliver and Beasley's liability under the Settlement Agreement in the event that the condition contained in the second sentence of Paragraph 7 is unmet.  Paragraph 8 instructs that the Shortfall be calculated by subtracting the amount received by Lofts from the sale of the Remaining Units on or before the first anniversary of the Settlement Agreement from $1,948,000.  Since Lofts had received no funds from such a sale on the anniversary date, the Shortfall was the full $1,948,000.  Paragraph 8 also provides that Lofts shall first draw on the LOC for up to $150,000 and that Beasley and Oliver are jointly and severally liable for the remainder, with Oliver's liability limited by the O-Note.  Thus, as of September 11, 2007, Beasley was liable for $1,798,000 and Oliver was liable for the face amount of the O-Note.

20

The Court concludes further that Oliver's liability under the O-Note is $350,000 plus interest at the rate of 25% per annum from September 11, 2007.  The O-Note defines Oliver's obligation as "up to the principal sum of $350,000 . . . without interest" and provides that such "principal or lesser amount as may be payable [under the Settlement Agreement] shall be payable on or before the first anniversary of the date hereof."  The O-Note then states:  "Amounts not paid when due shall bear interest at the rate of 25% per annum."  The Court finds that the plain and ordinary meaning of this language is that as of September 11, 2007, Oliver was liable to Lofts for the principal amount of $350,000 and that interest of 25% per annum has been accruing since that date.

While the language of the Settlement Agreement did not require it do so, Lofts has credited the amount it received from the sales of the Remaining Units against the damages it seeks here.  The Court therefore enters judgment against Beasley for $945,535.09 and against Oliver for the principal amount of $350,000 plus interest at the rate of 25% per annum from September 11, 2007.

D.W.F.